

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0309-20

---

### DARREN LAMONT BIGGERS, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### COOKE COUNTY

---

McCLURE, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, AND WALKER, JJ., joined. KELLER, P.J., filed a dissenting opinion. SLAUGHTER, J., filed a dissenting opinion in which KELLER, P.J., YEARY and KEEL, JJ., joined.

### O P I N I O N

When the State alleges, but fails to prove, the codeine mixture the defendant possessed contains a sufficient proportion of another medicine to be medicinal, should he be acquitted or convicted of the greater offense? Because we hold that the

evidence was insufficient to prove that Appellant possessed Penalty Group 4 codeine but was not negated beyond a reasonable doubt as required for Penalty Group 1 codeine, we hold that he did not possess Penalty Group 1 codeine. We agree with the court of appeals that Appellant is entitled to an acquittal.

## BACKGROUND

A confidential informant employed by a police agency arranged to purchase methamphetamine from Appellant. When Appellant arrived in his vehicle at the arranged place and time, officers detained him for a narcotics investigation. The investigating officer saw a Sprite bottle and a white Styrofoam cup, both filled with "a purple-type substance." Appellant admitted that it was "lean"—a commonly used term for codeine cough syrup mixed in a beverage. The substance field-tested positive for codeine, and officers arrested Appellant for possession of a controlled substance.

The State charged Applicant with possession of a Penalty Group 4 controlled substance (codeine) in an amount over 400 grams.[1] (Appellant was also charged with

---

[1] The amended indictment in this case read:

> THE GRAND JURORS, duly selected, organized, sworn and impaneled, as such for the County of Cooke, State of Texas, at the January Term, A.D., 2017, of the 235th Judicial District Court of said county, upon their oaths present in and to said Court, that on or about the 7th day of February 2017, in the county and state aforesaid, and anterior to the presentment of this indictment, Darren Lamont Biggers, hereinafter styled "defendant," did then and there intentionally and knowingly possess a Penalty Group 4 controlled substance, namely, a compound, mixture, or preparation in an amount of 400 grams or more, that contained not more than 200 milligrams of codeine per 100 milliliters or 100 grams and one or more

tampering with physical evidence, but that conviction is not at issue in this proceeding.)

During the State's case-in-chief, the State proffered testimony from a chemist regarding the contents of the two items seized from the cupholders in Appellant's vehicle: a Sprite bottle and a Styrofoam cup. The chemist testified that both items "had a similar odor to cough syrup or something of the like" and that both contained "an unspecified amount of codeine and promethazine." On *voir dire*, the chemist explained that she was not asked to quantify the amount of codeine and promethazine in the Sprite bottle or the Styrofoam cup and she did not know the concentration level of codeine in either sample. She did testify, however, that labels on "common cough syrup" do "usually state that it is a Penalty Group 4" and has "not more than 200 milligrams of codeine per 100 milliliters." Finally, the chemist testified that promethazine was a nonnarcotic active medicinal ingredient, but she never testified as to "whether the combination of promethazine and codeine had valuable medicinal qualities other than those possessed by the codeine alone." When the prosecutor asked, "[d]oes the promethazine add something to this mixture medicinally . . . ?" the chemist responded, "It appears to, but I can't say for sure."

---

nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone.

**DIRECT APPEAL**

On appeal, Appellant argued that, at best, the State only established the mere presence of promethazine, and that by failing to prove the level of concentration of codeine in the substances possessed by Appellant, as required by the statute, the State failed to establish an essential element of the offense. The court of appeals agreed, holding that the statute requires more than the mere presence of promethazine. *Biggers v. State*, 601 S.W.3d 369, 376–78 (Tex. App.—Amarillo, Mar. 6, 2020). Therefore, the court of appeals found the evidence was insufficient to establish that (1) the concentration level of the codeine was not more than 200 milligrams of codeine per 100 milliliters, and (2) the presence of promethazine was in a sufficient proportion to convey on the mixture valuable medicinal qualities other than those possessed by the codeine alone. *Id.*

The court of appeals rendered a judgment of acquittal, stating that:

"[B]ecause the insufficiency of the evidence in this case goes to the nature of the substance possessed, as opposed to the amount possessed, applying the standards of evidentiary review to each of these lesser included offenses, we find the evidence is still insufficient to support a conviction as to any of the lesser included offenses."

*Id.* at 378.

**STATE'S PETITION**

We granted review to answer the State's question as to what is the proper remedy in this circumstance. By the State's failure to prove the proportion of the

codeine mixture as required in the lowest tier of the codeine and codeine-derivative statute (Penalty Group 4), is Applicant actually guilty of the higher tier offense (Penalty Group 1)?

In analyzing this question, we look to the statute itself. The Texas Health & Safety Code establishes different tiers of punishment for codeine possession:

- Penalty Group 1: "Codeine not listed in Penalty Group 3 or 4." TEX. HEALTH & SAFETY CODE § 481.102(3)(A).

- Penalty Group 3: A mixture of "not more than 1.8 grams of codeine . . . per 100 millimeters or not more than 90 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts." *Id*. at § 481.104(a)(4).

- Penalty Group 4: A mixture "that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the . . . mixture . . . valuable medicinal qualities other than those possessed by the narcotic drug alone" and "not more than 200 milligrams of codeine per 100 milliliters or per 100 grams." *Id.* at § 481.105(1).

### *SANCHEZ & MILES*

Members of this Court have previously addressed this somewhat confusing statutory scheme in both *Sanchez v. State*, 275 S.W.3d 901 (Tex. Crim. App. 2009) and *Miles v. State*, 357 S.W.3d 629 (Tex. Crim. App. 2011).[2]

In *Sanchez v. State*, the appellant was charged with Penalty Group 4 codeine possession. *Sanchez*, 275 S.W.3d at 902. Similar to the instant case, the State offered

---

[2] Judge Cochran stated in her concurring opinion in *Miles* that, "The law concerning possession of codeine is confusing and incoherent." 357 S.W.3d at 638-39.

evidence that promethazine was present in the mixture in an unquantified proportion. *Id*. at 903. A majority of this Court held that the evidence was sufficient for a Penalty Group 4 conviction because:

> "[E]vidence that the promethazine in the substance 'on its own has a valuable medicinal quality' is sufficient to support a finding that it was 'in sufficient proportion to confer on the substance valuable medicinal qualities.' Under these circumstances, the State was not required to quantify the promethazine in the substance."

*Id*. at 905.

In her concurring opinion in *Sanchez*, Presiding Judge Keller (joined by three other judges), noted that, "The legislature has decided to punish possession of cough medicine with codeine less severely than possession of codeine alone." *Id*. Judge Keller further stated that possession of cough medicine with codeine is a lesser included offense of possession of codeine, and, therefore, if the promethazine was not in the proper proportion, an appellant "would be guilty of a *greater* offense—*i.e.*, possession of codeine under Penalty Group 1." *Id*. at 906.

Judge Johnson also concurred in *Sanchez* (joined by two other judges), pointing out that any failure of proof regarding the proportion of promethazine accrued to the benefit of the appellant because "[t]he presence of promethazine saved appellant from a felony penalty range." *Id*. at 908.

In *Miles v. State*, the record was unclear as to which penalty group the appellant was charged and convicted for. *Miles*, 357 S.W.3d at 631-32. This Court

reviewed the record and concluded that Miles was charged with Penalty Group 1 possession, but the evidence failed to prove that. *Id*. at 636, 638. The Court noted that "the qualitative elements of a Penalty Group 4 offense" were "a mitigating factor, or an exception, to the offense of possession of Penalty Group 1 codeine." *Id*. at 636. The Court found that the evidence at trial "showed only the mere presence of promethazine" but no evidence as to the "therapeutic or medicinal qualities, or lack thereof, of the amount or concentration of promethazine." *Id*. at 638. As a result, "a rational juror could not infer whether the promethazine was or was not in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone." *Id*. Further, this evidence was necessary to show that this was codeine "not listed in Penalty Group 3 or 4." *Id*. at 637. In conclusion, the Court held in *Miles* that the evidence was insufficient, and an acquittal was the appropriate remedy. *Id.* at 638.

In her dissenting opinion, Presiding Judge Keller once again stated that if promethazine was not present in sufficient proportion to confer valuable medicinal qualities, then the defendant was "guilty of a greater offense than that for which he was convicted." *Id*. at 645. Specifically, Judge Keller stated:

> Judge Cochran contends, among other things, that the evidence is insufficient to show a Penalty Group 4 offense because the evidence does not show that promethazine was present "in sufficient proportion

to confer . . . valuable medicinal qualities." [citation omitted] In other words, appellant did not prove that there was enough non-codeine cough medicine in the mixture. But that is a *mitigating* fact that distinguishes Penalty Group 4 codeine from Penalty Group 1 codeine. To obtain a conviction for a Penalty Group 1 codeine offense, the State has to disprove that mitigating fact; it does not actually have to prove that fact to obtain a conviction for the lesser, Penalty Group 4 codeine offense.

*Id*. at 644.

## ANALYSIS

Now, ten years later, we find ourselves once again struggling with this confusing statutory scheme. Appellant, much like Sanchez and Miles, has alleged that the evidence is insufficient to prove that he possessed Penalty 4 Group codeine. The court of appeals agrees. We also agree. But what is the proper remedy?

The court of appeals held that the proper remedy is an acquittal. *Biggers*, 601 S.W.3d at 380. The intermediate court found that the State was unable to provide any testimony establishing an essential element of the State's case, namely the level of concentration of codeine in the substances possessed by Appellant, making the evidence insufficient to support his conviction. *Id*. at 377-78.

The court below then proceeded to conduct a "*Bowen* analysis"[3] to see if the case should be remanded to the trial court for modification of the judgment to reflect

---

[3] In *Bowen v. State*, 374 S.W.3d 427, 431–32 (Tex. Crim. App. 2012), this Court held that, when an intermediate court finds the evidence insufficient to support a conviction, the court is not required to order an acquittal if the judgment can be modified to a lesser included offense.

a lesser included offense.[4] *Id.* at 378. The intermediate court held that the evidence is insufficient to support a lesser included offense because the nature of the evidence, as opposed to the amount of the evidence, was insufficient. *Id.*

The State disagrees and argues that Appellant should not be acquitted because he is actually *guiltier* than the State alleged. The State directs our attention to our opinion in *Miles,* which held that Penalty Group 4's "valuable medicinal qualities" language functions as an element to negating guilt for Penalty Group 1 codeine. *Miles*, 357 S.W.3d at 636. Therefore, the State argues, if the State fails to prove the medicinal quality, the only remaining possibility is that it is codeine not listed in Penalty Group 3 or 4, and thereby, Penalty Group 1 codeine.

In order to prove that Appellant is guilty of the greater offense we need to, once again, look at the statute. Penalty Group 1 codeine possession is defined as "codeine not listed in Penalty Group 3 or 4." *See* TEX. HEALTH & SAFETY CODE § 481.102(3)(A).

In *Miles*, this Court held that to prove this element, the State could show that (1) the concentration of the codeine was more than 1.8 grams of codeine per 100 milliliters, or (2) the codeine was not combined with active nonnarcotic ingredients

---

[4] The lesser included offenses of Penalty Group 4 are: (1) possession of a controlled substance, Penalty Group 4, 200 grams or more but less than 400 grams, (2) possession of a controlled substance. Penalty Group 4, 28 grams or more but less than 200 grams, and (3) possession of a controlled substance. Penalty Group 4, less than 28 grams. *See* TEX. HEALTH & SAFETY CODE § 481.118(b), (c), and (d).

in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone. *Miles*, 357 S.W.3d at 637–38; s*ee also* Tex. Health & Safety Code §§ 481.104(a)(4), 481.105(1).

In the instant case, we know the substance possessed by Appellant contained other nonnarcotic therapeutic ingredients because: (1) Appellant himself admitted the substance was "lean," (2) the chemist testified that both items "had a similar odor to cough syrup or something of the like," and (3) the chemist testified that both contained "an unspecified amount of codeine and promethazine."

There is no question that promethazine is present in this mixture. And while the chemist did testify that promethazine was a nonnarcotic active medicinal ingredient, she failed to testify whether the codeine was combined with the promethazine in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone. Without this evidence, a rational juror could not infer that the promethazine was or was not in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone.

By the statute's very language, in a Penalty Group 1 prosecution, the State, which has the burden of proving the essential elements of a crime beyond a

reasonable doubt, must prove that the codeine does not fall in Penalty Group 3 or 4. To put it simply: The State must negate the possibility that the mixture was a Penalty Group 3 or 4 substance. Because we lack proof that the substance in this case is not a Penalty Group 4 substance, we cannot say it is then a Penalty Group 1 substance.

Perhaps if the chemist had been asked by the State to quantify the amount of codeine and promethazine in the Sprite bottle or the Styrofoam cup in order to determine the concentration level of codeine in either sample, she could have testified as to whether the presence of promethazine was in a sufficient proportion to convey on the mixture valuable medicinal qualities other than those possessed by the codeine alone. If her answer was yes, the State could have successfully obtained a conviction for possession of codeine Penalty Group 4.  If her answer was that the substance did contain some nonnarcotic therapeutic ingredients, but the codeine concentration was greater than 1.8 grams (Penalty Group 3) or 200 mg (Penalty Group 4) per 100 milliliters of substance, then the State could have successfully obtained a conviction for possession of codeine Penalty Group 1 (because that is proof that the codeine is not listed in Penalty Group 3 or 4).  Because this was not done in this case, we lack the proof (or the negation of the proof) as to what the substance actually is.

Although the State would find it "absurd" to acquit the defendant based on these facts, we disagree. When the State brings a defendant to trial for possession of

a specific penalty group (where that penalty group requires a specific quantity and proportion analysis), fails to ensure that the proper testing is conducted, and fails to provide testimony to the jury as to the specific quantity and proportion analysis as required by the statute, and then turns to this Court to invent a creative way to uphold this conviction, perhaps this is a scenario that borders on absurdity. We sympathize with the State that these statutes are confusing and, to borrow a few words from Judge Cochran from *Miles*, are not user- and jury-friendly. *Miles*, 357 S.W. 3d at 643. But until the Legislature changes the statute, the State must prove that an alleged controlled substance containing codeine meets the statutory definition of codeine as set out in Penalty Group 1, 2, 3, or 4.

We affirm the decision of the court of appeals in Cause Number 07-18-00375-CR.

Delivered: September 22, 2021

PUBLISH